59 463
160s 636

# Illinois Central Railroad Company v. Annie O'Connell.

1. CARRIERS OF PASSENGERS—*Not Insurers.*—Carriers of passengers are not insurers of the safety of their passengers, but it is their duty to exercise the highest degree of care consistent with their avocation. A danger that might readily be discovered or anticipated by reasonable and practicable care and diligence must be avoided in order that the carrier shall escape liability.

2. SAME—*Liability for Neglect of Duty.*—A train on the appellant's road arrived at a station; the conductor called out the name and a woman with a child in her arms, proceeded to alight. There was no platform for her to step upon; the distance to the ground was about two feet; as she was attempting to step to the ground her dress caught upon an extra coupling pin, which was being carried in its usual place and projected two or three inches above the car platform. · She was jerked and fell, sustaining injuries. *Held,* that permitting the pin to so project was dangerous to female passengers and fixed appellant's liability.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed July 5, 1895.

SIDNEY F. ANDREWS, attorney for appellant; JAMES FENTRESS, of counsel.

JOHN F. WATERS and HIRAM BLAISDELL, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

In the forenoon of July 7, 1892, plaintiff, then thirty-one years of age, was a passenger on one of the defendant's trains, to be carried from the foot of Lake street in Chicago, to a station on defendant's road called South Chicago. When the train arrived at South Chicago, the conductor called out the station, and plaintiff walked out on the platform of the car in which she had been riding, and proceeded to descend the steps of the car until she reached the lowest step. There was no station platform at that station for her to step upon.

The distance from the bottom step to the ground was about two feet. She was carrying her two-year-old child in her arms, and as she was attempting to step from the lowest step to the ground, her dress caught on an extra coupling-pin, which was being carried in its usual place, and projected two or three inches above the top of the beam that forms a part of the car platform, and she was jerked and fell. She was pregnant at the time, and on account of the injury and shock, immediately gave birth to a *fœtus* about three months old. In December of the following year she suffered another miscarriage on account of general weakness and nervous prostration. Before the injury she was a strong and healthy woman.

The car platform, coupling-pin in question, and everything pertaining thereto, were in the usual and customary condition and in their usual places.

Counsel for appellant says in his brief: " While the appellant denies that the plaintiff received any injury, it does not deny that her dress caught on the head of this pin; but it claims that the catching of her dress thereon was purely an accident, the happening of which it could not have reasonably foreseen and provided against; that the carrying of such a pin as this was an essential part of the Miller platform, one of the safest platforms known to and in use by every first-class railroad company in the country; that it, appellant, had used this Miller platform and carried such a pin in a similar position on all of its many suburban cars for more than twenty years, and it would have shown, had the court permitted it, that many millions of passengers had been carried safely and without injury occurring from having such a pin as the one in question in a similar place on its cars."

As we gather from the testimony of Barr, a superintendent of railway motive power, who was a witness for the appellant, this extra pin is carried on cars using the Miller platform and hook, mainly, if not exclusively. for use in cases where it should become necessary to couple to cars that are coupled only by a link, and for that purpose the

pin usually, if not always, accompanies the Miller platform, and forms a part of its equipment, although never necessary in coupling two cars that are furnished with the Miller platform and coupler. We are aided in our understanding of the evidence concerning the location of the pin when not in use, and its appearance above the beam where it is carried, by a photograph introduced in evidence by the appellant showing the end of a passenger car having the Miller equipment.

An inspection of the photograph, as well as the testimony that is not contradicted, shows that this pin, with a ring in it to which is attached a chain, projects above the end beam of the car, in a hole through which it is carried, some two or three inches. It is not covered or protected in any way, except that the hand rail which springs from the end of the beam and is carried around and over it at a height of probably three feet to the brake rod, may be said to be a protection or covering. At least two of appellant's witnesses testify that the pin might as handily and usefully be carried in a different place with greater safety, and the photograph corroborates such evidence and demonstrates its truth to our senses.

While men wearing their customary clothing could hardly be caught and injured by a pin placed as this one was, it seems, viewed as the photograph enables us to see it, as though such a pin projecting two or three inches above an end beam, the top of which is on a level with the floor and forms a part of the car platform, and close to where the car steps begin to descend, was a dangerous thing and full of peril to women with their customary skirts, who should descend the steps provided for passengers to leave the cars by.

While it is true that railway carriers of passengers are not insurers of the safety of their passengers, it is their duty to exercise the highest degree of care consistent with their avocation. A danger that might readily be discovered or anticipated by reasonable and practicable care and diligence must be avoided in order that the carrier shall escape liability. C. & A. R. R. Co. v. Pittsburg, 123 Ill. 9; C. & A.

R. R. Co. v. Michie, 83 Ill. 427; Seymour v. C. B. & Q. R. R. Co., 3 Bissell, 43.

The question in such a case is not whether the peril was one to which passengers had long been subjected and from which no injury had previously befallen, but whether it is such as might and ought in the exercise of reasonable diligence to have been known to and guarded against by the carrier in the exercise of that high degree of care which the carriers owe to its passengers.

The evidence shows satisfactorily that it was an unnecessary peril, and one which, in our opinion, becomes apparent to any one who, in the light of what did actually happen, shall regard it. That it was not perilous to a woman passenger who should alight at a station provided with a platform on a level with a car platform, is entitled to no consideration. The fact here was that the appellant had provided no station platform, and that all passengers had to descend the car steps to the ground, which was on a level with the rails of the road. This pin sticking up above the beam into which it was inserted at a place close to where the car steps began to descend, would manifestly afford a ready object for the skirts of a woman, which might be swung by an untoward breeze, or the motion of the wearer, to catch upon.

Now that it has happened, it is obvious to all intelligent persons that such an occurrence was liable to happen at any time under like conditions. And it is no excuse for appellant's lack of duty that a similar accident had never before happened in the course of appellant's business, and that appellant had no reason from its past experience to foresee that the accident would occur.

Under the circumstances shown, it was the duty of appellant to have foreseen what is so apparent, and to have avoided it.

The case of N. C. S. R. R. Co. v. Eldridge, 51 Ill. App. 430, affirmed in 151 Ill. 542, possesses numerous features pertaining to the manner of the accident, like this. What we have said sufficiently answers the questions argued concerning the rejection of offered evidence, and upon the instructions.

That the appellee was seriously injured by the fall seems to be a warranted conclusion from the evidence, and looking to the evidence alone we can not say that the judgment for $5,000 was for too much.

No substantial error existing in the record, the judgment will be affirmed.